## WRAY v. MILLER.

(Supreme Court, Appellate Term. January 21, 1910.)

1. BILLS AND NOTES (§ 489*)—ACTIONS—PLEADINGS—ISSUES.

A complaint in an action on a note alleged the making of the note by defendant, its delivery to the payee for value, its presentment for payment at maturity, its dishonor, and subsequent assignment to plaintiff. The answer admitted the signing of the paper, but denied all other material allegations of the complaint, and set up as a defense that on or about the date of the note defendant entered into an agreement with the payee, wherein the payee agreed to procure the consents of property owners so that a liquor license might be obtained on premises specified on behalf of two persons named, that the payee did not get enough consents so that a liquor license might be issued on the premises, and that defendant procured the balance of the consents so that a liquor license could be issued. *Held*, that the defense did not add anything to the answer, and that the issue was simply such as was raised by the denials.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1587, 1603, 1604; Dec. Dig. § 489.*]

2. BILLS AND NOTES (§ 155*)—NEGOTIABILITY—TIME WHEN PAYABLE.

A note, which by its terms was to be "payed when we get it from the brewery after date," was not payable within a determinable future time, and hence was not a negotiable instrument, within Negotiable Instruments Law (Consol. Laws, c. 38) § 23, providing that an instrument is payable at a determinable future time when it is payable at a fixed period after date, or sight, or on or before a fixed or determinable future time specified therein, or on or at a fixed time after the occurrence of a specified event which is certain to happen, though the time of the happening be uncertain.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 407–410; Dec. Dig. § 155.*]

3. BILLS AND NOTES (§ 497*)—ACTIONS—BURDEN OF PROOF—VALUE.

In an action by an assignee on an instrument for the payment of money which is not negotiable, plaintiff must prove that value was given for it.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1676, 1677; Dec. Dig. § 497.*]

4. BILLS AND NOTES (§ 489*)—ISSUES AND PROOF.

Under an answer admitting the signing of the paper sued on, but denying all other material allegations of the complaint, which alleged delivery to the payee for value, presentment for payment at maturity, dishonor, and subsequent assignment, defendant was entitled to show want of consideration, but not misrepresentations by the payee inducing the making of the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1604, 1605; Dec. Dig. § 489.*]

5. BILLS AND NOTES (§ 489*)—ACTIONS—DEFENSES—PLEADING.

In an action on a nonnegotiable note given for services in securing the requisite number of consents of property owners to the issuance of a liquor license, finding a location for the saloon, and making financial arrangements, evidence that some of the signatures were forged, so that one additional consent had to be procured, and that the payee warranted the consents to be genuine, showed only a partial failure of consideration, not admissible under a general denial.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1603, 1604, 1609; Dec. Dig. § 489.*]

Appeal from Municipal Court, Borough of Manhattan, Third District.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Charles P. Wray against Emil B. Miller. Judgment for defendant, and plaintiff appeals. Reversed.

Argued before GIEGERICH, DAYTON, and LEHMAN, JJ.

Frederick Mellor, for appellant.

Edward I. Herbst, for respondent.

GIEGERICH, J. The complaint alleges the making of a promissory note by the defendant, payable to the order of one Traynor, its delivery to the latter for value, its presentment for payment at maturity, its dishonor, and its subsequent assignment by Traynor to one Bridel, and by him to the plaintiff. The note is set out at length in the complaint and is in the following form:

"200.00/100.                                          June 30th, 1909.

"Payed when we get it from the Brewery after date I promise to pay to the order of T. Traynor two hundred 00/100 dollars, at 509–511 East 18th St., N. Y. C.

"Value received.                                      E. B. Miller."

The answer admits the signing of this paper, but denies all the other material allegations of the complaint. It also includes what purports to be a defense in the following language:

"That on or about the 30th day of June, 1908, the defendant entered into an agreement with one Thomas Traynor, wherein the said Traynor agreed with the defendant herein to procure the consents of property owners, so that a liquor license may be obtained on premises southeast corner of Fifty-Eighth street, and Second avenue on behalf of Foley & O'Shaughnessy. That the said Thomas Traynor did not get enough consents so that a liquor license may be issued on the premises, but that the defendant procured the balance of the consents of the property owners, so that a liquor license may be issued to the above Foley & O'Shaughnessy."

This plea, quite as remarkable in its way as the note set forth in the complaint, did not add anything to the answer, so that the issue was simply such as was raised by the denials. As the note set out was not made payable at a determinable future time within the definition of the statute (Negotiable Instruments Law [Consol. Laws, c. 38] § 23), it was not a negotiable instrument, and consequently it was a part of the plaintiff's case to prove that value was given for it (Deyo v. Thompson, 53 App. Div. 9, 65 N. Y. Supp. 459), and therefore, under the denials contained in the answer, the defendant was entitled to show want of consideration. He had no right, however, to show merely misrepresentations on the part of the payee inducing the making of the note, for this was matter of defense, and required to be pleaded as such.

It is not clear from the record how far these principles were applied upon the trial, and the informalities of the trial, combined with the obtuseness of most of the witnesses, make it a task of very great difficulty to gather from the record a clear understanding of the merits of the case. We think, however, that it was sufficiently shown that Foley & O'Shaughnessy, strangers to the action, desiring to start business as liquor dealers, employed Traynor to find a location for their proposed saloon, to arrange with a brewery to advance the necessary money to start the business and to procure a dealer to supply the fix-

'tures. Whether or not he also undertook, as part of the agreement, to procure the necessary consents of the owners of property in the neighborhood was disputed. At any rate, Traynor found the premises suitable for the purpose, and they were rented by Foley & O'Shaughnessy. He also arranged with a certain brewery to advance the necessary money on mortgage, and further made an arrangement with the defendant to install the necessary fixtures. In the meantime the consents of the neighboring owners had been sought by various persons. Some of them had been procured by Traynor, and a paper embodying all the consents procured by all parties was in Traynor's possession. The consents of nine owners of neighboring properties were necessary, and the paper bore 14 signatures.

Everything being ready for the commencement of operations, except the excise license, Foley & Shaughnessy asked Traynor for the paper containing the consents, in order that the license might be procured. Traynor refused to give up this paper, except on payment of $200. Whether this $200 was demanded as payment for the services which Traynor had rendered, aside from procuring the consents, or whether it was demanded as compensation for his services in procuring such consents, was the point chiefly litigated on the trial. The defendant was present at the time, and Foley & O'Shaughnessy, not having the money necessary to meet Traynor's demand, requested the defendant to advance it. The defendant offered to secure the payment to Traynor by executing the note which is the basis of the action, at the same time taking the note of Foley & O'Shaughnessy for a like amount. This was accordingly done.

The defendant and his son insisted, in their testimony, that the $200 was demanded by Traynor solely as payment for the consents, and that the defendant gave his note solely for that purpose, and only upon Traynor's assurance that the consents were "all right." This was denied by Traynor. It turned out subsequently that some of the signatures to the consents were forged, and that the bonding company rejected all but eight of them, thus rendering it necessary to procure one additional consent at an expense of $100, which was paid by the defendant, but for which Foley & O'Shaughnessy afterwards gave their note. I think the weight of the testimony clearly was that Traynor's demand included compensation for services other than in procuring consents, whether or not it also included the last-named services. Assuming that Traynor did undertake to procure the consents, as well as to perform the other services, and that his demand for $200 included all services rendered or agreed to be rendered, the fact that some of the signatures turned out to be forged, so that one additional consent had to be procured, amounted only to a partial failure of the consideration, and should have been pleaded as such. It was not admissible under the general denial, and could not justify the defendant in repudiating his obligation in toto. 2 Abb. Tr. Brief on Pleading (2d Ed.) p. 1381, § 148; Rogers v. Polytechnic Institute, 87 App. Div. 81, 84 N. Y. Supp. 12. Or, if Traynor warranted the consents to be genuine, the fact should have been pleaded, and the breach of the warranty set up as a counterclaim. It is to be noted, too, that no proof was given that any signature amongst the purported consents

was forged, except one. As to the others it was merely proved that the bonding company refused to accept them, but whether with or without just cause was not established.

I think, upon the whole case, that a new trial should be ordered, upon which it may be hoped that the pleadings will clearly indicate the issues to be tried and the record present a more intelligible narrative.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

LEHMAN, J., concurs. DAYTON, J., concurs in result.